COURT OF APPEALS, JUNE TERM, 1820.

FOUKE *et al. vs.* KEMP's Lessee.

Fouke
vs
Kemp

A devise to the testator's children where he has children of his own, and step-children, does not embrace the step-children; and parol evidence is inadmissible to prove that the testator intended to include them

Has the introductory clause in a will, and the charging the estate devised with the payment of debts, the effect to enlarge the estate of the devisee? Quere

An ejectment may be maintained for land by its reputed name.

APPEAL from *Washington* county court. Ejectment for four tracts of land, viz. *Bachelor's Delight, Felty's Fortune, Felty's Addition,* and *Addition to Dearbought.* The defendants in the court below, (the now appellants,) took defence on warrant for the three first tracts only, and plots were returned. For the last tract, judgment was entered by default against the casual ejector.

1. At the trial, the plaintiff below read in evidence the following patents viz. one for *Bachelor's Delight,* granted to *John Feltigrow,* on the 11th of November 1752; another for *Feltigrah's Fortune,* granted to *John Feltigrah* on the 18th of June 1742; and one for *Felte's Addition* granted to *Felte Graw* on the 25th of May 1743. He also gave in evidence, that the patentee in the several patents named, was one and the same person, though called by different names, and that *John Feltigraw* was that patentee. That the *patentee* died in the year 1760, seised in fee simple of the above mentioned tracts of land, and leaving two daughters *Barbara* and *Mary,* his only children, and heirs at law, and a widow, who survived him about two years. That *Barbara* married *Ludowick Kemp,* before the year 1767, by whom she had issue several children, and that she died in 1784, leaving *Henry Kemp,* the lessor of the plaintiff, her eldest son and heir at law. That *Ludowick Kemp* survived her, and died in the year 1813. That *Mary,* the other daughter of *John Feltigraw,* married *John Wolgamot,* by whom she had issue several children. That *Wolgamot* died in the year 1779, and his wife *Mary* survived him, and afterwards died in the year 1814, leaving a will legally executed; and which the plaintiff read in evidence, dated the 18th of July 1808, which contains, among other devises, the following: "I give, devise and bequeath, unto my son *John Wolgamot,* all my real and personal estate which I may die seised or possessed of, in *Washington* county, or elsewhere, to him the said *John Wolgamot,* his heirs and assigns for ever, he paying the following legacies hereafter mentioned to wit," &c. The plaintiff further read in evidence a deed from *John Wolgamot,* the devisee in the said will mentioned, to *Henry Kemp,* the lessor of the plaintiff, dated the 20th of December 1816, for all the

land within the tracts of land called *Felty's Fortune, Felty's Addition*, and the part of *Bachelor's Delight*, laying on the east side of the following division lines, to wit, &c. and proved, that all the land within the three tracts, which lies on the east side of the said six division lines, to which *John Wolgamot* has any right, &c. is the land conveyed by this deed. The deed recited, that *Feltigraw* died seised of *Felty's Fortune*, *Felty's Addition*, and part of *Bachelor's Delight*. That a resurvey was made of the said lands by *Wolgamot* and wife, and *Kemp* and wife, and called *The Amendment*, &c. The defendants then read in evidence the will of *John Feltigraw*. It is stated to be the will of *Valentine Grave*, dated the 29th of September, 1760, and after the following introductory clause, viz. "and as touching such worldly affairs wherewith it hath pleased God to bless me in this life, I give, devise, and dispose of the same, in the following manner and form, to wit," he then devised to his daughter *Mary*, 200 acres of land, and to his daughter *Barberry*, 200 acres of land, to be taken out of his tract of land where his dwelling house stands, and up to the Upper Spring. He also gave to his said daughters £60, to be paid to each of them; and gave also to each of them a feather bed, &c. and that after all was divided, and all his debts and funeral expenses were paid, those two daughters should have an equal share with all his surviving children, only giving to his wife *Elizabeth*, the third part of all his estate both real and personal, during her life, and after her decease, to be equally divided amongst all his surviving children, &c. They also proved, that *Valentine Grove*, the devisor in said will, and *John Feltigraw*, the patentee before mentioned, was the same person. They also read in evidence the following deposition, taken by consent, and read under an agreement that the same should be evidence as far as the matters therein contained were legally admissible, viz. The deposition of *Mary Kershner*, aged about 74 years, taken 24 of March, 1819—She knew *Valentine Grove* and his family; she was 15 or 16 years old when he died. He married a widow *Shafer*, who had four children by her first husband, *Nicholas, Peggy, Betsey* and *Susan*, all very small when their mother was married to *Grove*. *Susan* appeared to be about two years older than *Mary* the eldest of Mrs. *Grove's* children by her last husband. *Peggy* had married and left

the family, but the other three lived with *Grove*. *Betsey* had married and left the family before *Grove* died. Does not remember whether *Nicholas* and *Susan* had or not. *Grove* treated them as *his own children*. They always called him father, and he spoke to them as he did to his own children, and sometimes called *them children*, and sometimes called them by their christian names. Mrs. *Grove* was upwards of 60 years of age when her last husband died, and had but two children, *Mary* and *Barbara*, by him. That Mrs. *Grove's* children by her first husband, were known not to be the children of *Grove*, but his step-children. *Mary* and *Barbara* were called *Grove*, and the children of *Shafer* called by the name of *Shafer*. *Mary* was married to *Wolgamot*, and *Barbara* was married to *Ludwick Kemp*, who was the father of *Henry Kemp*, the lessor of the plaintiff. The plaintiff then gave in evidence, that all of the step-children of *John Feltigraw*, mentioned in the foregoing deposition, died about 25 years ago, but left issue. The plaintiff then prayed the opinion of the court, and their direction to the jury, that if they believed the evidence, the plaintiff was entitled to recover all that part of *Batchelor's Delight* and *Felty's Addition*, for which the defendants had taken defence on the plots in this cause. This prayer the court, [*Shriver* and *T. Buchanan*, A. J.] granted. The defendants excepted.

2. The plaintiff then further gave in evidence a grant for the tract of land called *The Amendment*, for the purpose of shewing that the tract of land called in the patent *Feltigraw's Fortune*, was also known by the name of *Felty's Fortune*, as it was called in the declaration in the cause. This tract, called *The Amendment*, was granted to *John Wolgamore* and *Mary* his wife, and *Lodwick Kemp* and *Barbara* his wife, on the 10th of September 1787, and recited that they were seized of and in the following tracts or parts of tracts of land, lying in *Frederick* county, and contiguous to each other, viz: 620 acres, part of the *Resurvey* on *Batchelor's Delight*, originally on the 11th of November 1752 granted unto *John Feltigraw* for 818½ acres; *Felty's Fortune*, originally on the 18th June 1742 granted to the the said *Feltigraw* for 150 acres; *Felty's Addition*, originally on the 25th of May 1743 granted unto the said *Feltigraw* for 120 acres, &c. He also offered in evidence, the deed before mentioned, from *John Wolgamot* to *Henry*

*Margin notes:*
JUNE 1820.

Fouke
vs
Kemp

Ejectment may be maintained for land by its reputed name.

*Kemp,* for the same purpose; and proved, by competent witnesses, that the tract called in the patent *Feltigrah's Fortune,* is generally reputed and known in the neighbourhood by the name of *Felty's Fortune.* The defendants then prayed the opinion of the court, that upon the declaration filed in this cause, and the evidence stated in the exceptions, the plaintiff was not entitled to recover any part of the land called in the patent *Feltigrah's Fortune.* The court refused to grant the prayer, and the defendants excepted. The verdict and judgment being for the plaintiff, the defendants prosecuted this appeal.

The case was argued before BUCHANAN, EARLE, JOHNSON, and DORSEY, J.

*Ridout,* for the appellants, relied on *Barker vs. Giles,* 3 *P. Wms.* 282. *Minshull vs. Minshull,* 2 *Atk.* 412. *Wythe vs. Thurlston, Ambl.* 555. *Gale vs. Bennett, Ibid* 681. 8 *Vin. Abr.* tit. *Devise,* (T. b.) pl. 3, 7, 21, and (X. b.) pl. 5. 2 *Eq. Ca. Abr.* 290, pl. 7. *Pow. on Dev.* 224. *Pyot vs. Pyot,* 1 *Ves.* 335. *Newcomin vs.* Bakham, 2 *Vern.* 729. *Doe, d. Walley vs. Holmes,* 8 *T. R.* 1. *Goodtitle, d. Paddy vs. Maddern,* 4 *East,* 496. *Dunn, d. Moore vs. Millor,* 5 *T. R.* 558. 6 *T. R.* 175. 1 *Bos. & Pull.* 558. *Beachcroft vs. Beachcroft,* 2 *Vern.* 690. *Pre, in Chan.* 430. *Bailis vs. Gale,* 2 *Ves.* 48. (*4 Cruise,* 246.) *Throgmorton vs. Holliday,* 3 *Burr.* 1618. *Tanner vs. Wise,* 3 *P. Wms.* 295.

*Taney,* for the appellee, cited 4 *Bac. Ab.* tit. *Legacies,* (B. 2.) 348. *Cooke vs. Brooking,* 2 *Vern.* 106. *Radcliff vs. Buckley,* 10 *Ves.* 195. *Godfrey vs. Davis,* 6 *Ves.* 43; and 4 *Cruise,* 319.

BUCHANAN, J. delivered the opinion of the court, affirming the judgment. He stated, that as the testator, *Grove,* had children of his own, as well as step-children, the legal construction of his devise was, that his own children only took under it, and that that construction could not be affected by parol proof.